Andrew D. Campbell, OSB No. 022647
Email: andrew@heltzel.com
Heltzel Williams PC
PO Box 1048
Salem, OR 97308
Phone: (503) 585-4422
Fax: (503) 370-4302

Christopher J. Keeven, *pro hac vice*
Email: ckeeven@shawbransford.com
Victoria E. Grieshammer, *pro hac vice*
Email: vgrieshammer@shawbransford.com
Shaw Bransford and Roth PC
1100 Connecticut Ave NW, Suite 900
Washington, D.C. 20036
Telephone: (202) 463-8400

*Attorneys for Defendant John Doe 1*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NICOLE SVOBODA'S FIDUCIARY SERVICES, LLC, as conservator for DONAVAN LABELLA, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES OF AMERICA; JOHN DOE 1; and JOHN DOES 2-10, <br><br> Defendants. | Case No. 3:21-cv-01664-MO <br><br> **DEFENDANT JOHN DOE 1'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS** |

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS..................................................................................................ii

TABLE OF AUTHORITES ...........................................................................................iii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ................................................................................................................ 2

   I.   Plaintiff cannot rely on documents outside of his First Amended Complaint..................... 2

   II.   Congress, not this Court, is better suited to address Plaintiff's claim for monetary damages............................................................................................................................ 4

   III.   Plaintiff's claim against Defendant Doe 1 is meaningfully different from *Bivens*............. 7

   IV.   Special factors counsel hesitation. ................................................................................ 12

   V.   Defendant Doe 1 is entitled to qualified immunity........................................................ 17

CONCLUSION............................................................................................................ 20

# TABLE OF AUTHORITES

**CASES**

*American Apparel & Footware Ass'n, Inc v. Allen,*
  No. 3:21-CV-1757-SI, 2022 WL 6732521 (D. Or. Oct. 11, 2022) ……………………..…3

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,*
  403 U.S. 388 (1971) ……………………………………………………………..6, 10

*Bruneohler v. Tarwater,*
  743 F. App'x 740 (9th Cir. 2018) ……………………………………………….……..9

*Car Carriers, Inc v. Ford Motor Co.,*
  745 F.2d 1101 (7th Cir. 1984) ………………………………………...………………..3

*Carlson v. Green,*
  466 U.S. 14 (1980) ……………………………………………………………6, 15

*Cienciva v. Brozowski,*
  No. 3:20-CV-2045, 2022 WL 2791752 (M.D. Pa. July 15, 2022) …………………...9, 12

*Davis v. Passman,*
  442 U.S. 228 (1979) …………………………………………………………...….6

*Don't Shoot Portland v. City of Portland,*
  465 F. Supp. 1150 (D. Or. 2020) ……………………………………………………..17

*Egbert v. Boule,*
  ___ U.S. ___, 142 S. Ct. 1793 (2022) ……………………………1, 5, 7, 8, 12, 13, 14, 16

*Felarca v. Birgeneau,*
  891 F.3d 809 (9th Cir. 2018) ………………………………………………...……17, 19

*G.M. Leasing Corp. v. United States,*
  429 U.S. 338 (1977) ………………………………………………………….…...…7

*Graham v. Connor,*
  490 U.S. 386 (1989) …………………………………………………….……10

*Groh v. Ramirez,*
  540 U.S. 551 (2004) ………………………………………………………...……..…7

*Hernandez v. Mesa,*
  589 U.S. ___, 140 S. Ct. 735 (2020) …………………………………...……………5

*J.K.J. v. City of San Diego,*
    42 F.4th 990 (9th Cir. 2021) …………………………………………..…………3

*Katz v. United States,*
    389 U.S. 347 (1967) ……………………………………………………..……11

*Khoja v. Orexigen Therapeutics, Inc.,*
    899 F.3d 988 (9th Cir. 2018) …………………………………………..…………4

*Lyall v. City of Los Angeles,*
    807 F.3d 1178 (9th Cir. 2015) …………………………………………..…………11

*Minnesota v. Carter,*
    525 U.S. 83 (1998) ………………………………………………………..………10

*Nelson v. City of Davis,*
    685 F.3d 867 (2012) ……………………………………………………………18

*Pettibone v. Biden,*
    No. 3:20-CV-01464 (D. Or. Sept. 22, 2022) …………………………….………11, 12

*Turkmen v. Ashcroft,*
    No. 02-CV-2307, 2018 WL 4026734 (E.D.N.Y. Aug 13, 2013) …………………………16

*Washington Mobilization Comm. v. Cullinane,*
    566 F.2d 107 (D.C. Cir. 1977) …………………………………………….…………19

*Wilson v. Layne,*
    526 U.S. 603 (1993) ……………………………………………..……………..7

*Ziglar v. Abbasi,*
    582 U.S. ____, 137 S. Ct. 1843 (2017) ……………………...……………………1, 5, 6, 7, 8, 9

## STATUTES

Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 …………………………16

Executive Order No. 13,933, 85 FR 40081 ………………………………..……………..8, 17, 18

Reorganization Plan No. 2 of 1973, PL 93-253, 88 Stat 50 …………………………..……6, 15

28 U.S.C. § 566 …………………………………………………………...…………8, 9

28 U.S.C. § 566(i) ………………………………………………………………....9

28 U.S.C. § 2674 ……………………………………………………………...……………..5

28 U.S.C. § 2675 …………………………………………………………………………5

28 U.S.C. § 2680(h) …………………………………………………………………..6, 15

**RULES**

Fed. R. Civ. P. 15(a)(2) …………………………………………………...…………………3

**OTHER AUTHORITIES**

*Complaint Form Regarding United States Marshals Service Personnel or Programs,* U.S. Marshals Service,
https://www.usmarshals.gov/resources/forms/complaint-form-regarding-united-states-marshals-service-personnel-or-programs ………………………………………………14

*Office of Professional Responsibility,* U.S. Marshals Service,
https://www.usmarshals.gov/who-we-are/office-of-professional-responsibiliy …………14

*Submitting a Complaint,* U.S. Department of Justice, Office of the Inspector General,
https://oig.justice.gov/hotline/submit_complaint …………………………………………14

**INTRODUCTION**

This Court should dismiss Plaintiff Donavan Labella's claim against Defendant John Doe 1. Count IV against Defendant Doe 1 in his individual capacity must be dismissed because it presents a new *Bivens* context, special factors preclude a *Bivens* claim, and because Defendant Doe 1 is entitled to qualified immunity.

Plaintiff's arguments in opposition do not salvage his claims against John Doe 1. Plaintiff relies primarily on inapplicable cases preceding *Ziglar v. Abbasi*, 582 U.S. __, 137 S. Ct. 1843 (2017) and *Egbert v. Boule*, __ U.S. __, 142 S. Ct. 1793 (2022). Because *Abbasi* and *Egbert* limited *Bivens* and created a new, stringent test for *Bivens* claims, Plaintiff asks the Court to return to the '*ancien regime*' in which courts had the authority to freely imply rights of actions against express Supreme Court guidance. *Abbasi*, 137 S. Ct. at 1855. Obliging the Plaintiff's request and allowing Count IV to proceed against John Doe 1 is disfavored judicial activism, contrary to the Supreme Court's cautionary approach recently set out in *Egbert*.

Plaintiff's claim presents a new context because is meaningfully different than *Bivens* in many ways. To wit, the public location and setting of the alleged violation, the law enforcement duties being performed, and legal authority for such duties are all meaningfully different from *Bivens*. The bar to present a new *Bivens* context is low, and that low threshold is easily cleared here. Similarly, under the standard set by *Egbert*, a plethora of alternative remedial structures in place—as well as other special factors—deter law enforcement misconduct such as what Plaintiff alleges in this case. Plaintiff's argument for extending *Bivens* to this new context to entitle him to monetary damages is more appropriately addressed by Congress, not this Court. *See Egbert*, 142 S. Ct. at 1803 ("Unsurprisingly, Congress is far more competent than the Judiciary to weigh such policy considerations.") (citations omitted). For these reasons, Congress is better suited to hear

Plaintiff's arguments, a point that Plaintiff fails to address, and Claim IV against Defendant Doe 1 must be dismissed.

Trying to sway the Court against this inescapable conclusion, Plaintiff quotes in his opposition political media commentary to add new alleged facts and opinions. A party may not amend a complaint through a pleading, and the Court must adjudicate this the Motion based only on the facts Plaintiff alleged in his First Amended Complaint (FAC), not the media commentary quoted throughout Plaintiff's opposition.

Moreover, Defendant Doe 1 is entitled to qualified immunity. He acted in defense of federal property, acting with the authority of an Executive Order and statute, while confronted with a distructive crowd during a mass demonstration. Plaintiff presents no case law clearly establishing that Defendant Doe 1's behavior under these particular circumstances was clearly unlawful.

For these reasons, the Court should grant Defendant Doe 1's motion and dismiss Claim IV against Defendant Doe 1 in its entirety.

## **ARGUMENT**

### I.    **Plaintiff cannot rely on documents outside of his First Amended Complaint.**

Defendant Doe 1's motion must be decided only on the FAC and the facts alleged within.[1] Plaintiff attempts to circumvent this basic rule of civil procedure by quoting and citing alleged facts—as well as political opinions masquerading as facts—he did not allege in his complaint, by

---

[1] As stated in Defendant Doe 1's Motion, Plaintiff Labella incorporated a Washington Post article by citing and referencing it in the FAC. *See* ECF No. 51 at 8-10, 18 of 24; *see also Federal officers severely wounded a Portland protestor. Local leaders blame Trump,* Wash. Post. (July 13, 2020, 5:25 AM), https://www.washingtonpost.com/nation/2020/07/13/portland-protestor-injuredfederal/ (*hereinafter* "Washington Post"). Plaintiff concedes that he incorporated this article into his first amended complaint. *See* ECF No. 57 at 11, n. 11.

citing various political media stories and commentaries throughout his opposition to bolster his unpersuasive arguments.

In considering a motion to dismiss, the Court may only consider facts alleged into the complaint and documents incorporated into the complaint "by reference." *J.K.J. v. City of San Diego*, 42 F.4th 990, 997 (9th Cir. 2021) (citations omitted). In his response, Plaintiff presents, without explanation, *nine* web articles, which he relies on repeatedly to make new factual allegations within his "Introduction and Factual Background" section. *See* ECF No. 57 at 10-11 of 39. For example, through these articles, Plaintiff now asserts for the first time that "President Donald J. Trump sent federal agents to quell the unrest," that federal agents "snatched protestors off the streets using unmarked vans," and that federal agents assaulted a Navy veteran and a journalist. *See id.* at 10. Plaintiff also relies on these web articles to add new allegations about his own conduct, asserting that he "displayed 'no sign of aggressive provocation.'" *See id.* at 11.

Parties may not amend a complaint through a pleading. *See* Fed. R. Civ. P. 15(a)(2) (A party may "only" amend its pleading by leave of court or by written consent of the adverse party). The "proper procedure for Plaintiff[] to assert" additional facts "would have been to seek to amend the complaint in accordance with Rule 15(a)." *American Apparel & Footwear Ass'n, Inc. v. Allen*, No. 3:21-CV-1757-SI, 2022 WL 6732531, at *2 (D. Or. Oct. 11, 2022). Plaintiff has not properly amended his complaint to include these new allegations, and this Court should "reject Plaintiff[]'s attempt to amend" his complaint through the inclusion of new alleged facts and opinions asserted outside of the FAC. *Id.*; *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (holding "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss").

Similarly, Plaintiff did not ask the Court to take judicial notice of these documents and, even if he had, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Even if Plaintiff attempts to incorporate these documents into his FAC, which he cannot through his response, the Court must consider the entirety of the articles to be factual—such as the descriptions of violence and destruction in the Portland protests—not just the portions favorable to Plaintiff's claim. "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002.

Here, Plaintiff attempts to selectively assert not just facts, but also political opinions, from news articles that have not been judicially noticed or incorporated into his FAC. Plaintiff attempts to pressure the Court with emotionally-charged assertions from these articles. It is not this Court's role, though, to judicially create a damages remedy, against the Supreme Court's clear guidance, based on emotional pleas. This Court should not consider these documents, or their contents; nor should it be swayed to act outside of its judicial role on account of them. The Court must dismiss the claims against John Doe 1 based only on the allegations in the FAC.

## II. Congress, not this Court, is better suited to address Plaintiff's claim for monetary damages.

Congress, not the judicial branch, is better equipped to create a damages remedy for Plaintiff's alleged harm. *See* ECF No. 51 at 12. Plaintiff's opposition does not address the seminal question of 'who should decide' because the unavoidable answer defeats his *Bivens* claim against Defendant Doe 1.

4

*Egbert* stated plainly that "the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Egbert*, 142 S. Ct. at 1803 (citing *Hernandez v. Mesa*, 589 U.S. __, 140 S. Ct. 735, 750 (2020)). As the Supreme Court explained, "[i]f there is a rational reason to think that the answer is 'Congress'—as it will be in most every case . . . *no Bivens action may lie*." *Id.* (citing *Abbasi*, 137 S. Ct. at 1857-1858) (emphasis added). While *Egbert* has spoken most recently and most forcefully on this separation-of-powers issue, the deference toward Congress has persisted at least since *Abbasi*, wherein the Supreme Court clarified that "[w]hen a party seeks to assert an implied cause of action under the Constitution, separation-of-powers principles should be central to the analysis." *See Abbasi*, 137 S. Ct. at 1848 ("The question is whether Congress or the courts should decide to authorize a damages suit. Most often it will be Congress…"). In *Egbert*, the Supreme Court instructed that "[a]t bottom, creating a cause of action is a legislative endeavor" and that, when a court is asked to imply a *Bivens* remedy, the "watchword is caution." *Egbert*, 142 S. Ct. at 1802-1803 (citations omitted).

Dodging this seminal question, Plaintiff instead insists that this Court should allow his claim against Defendant Doe 1 to proceed because he is left with *Bivens* "or nothing." *See* ECF No. 57 at 23, 29. Plaintiff is wrong. His *Bivens* claim is *not* all or nothing. Plaintiff is pursuing monetary damages from Defendant USA for Defendant Doe 1's same alleged conduct through the FTCA, *see* FAC (Counts I, II, III), a remedy Congress created. *See* 28 U.S.C. §§ 2674, 2675. The Plaintiff in *Bivens* had no such alternative remedy available to him, *infra* 10, 20. Another available remedy, Plaintiff may also report any alleged misconduct by John Doe 1, or any other Deputy U.S. Marshal, to the U.S. Marshals Service or U.S. Department of Justice, Office of Inspector General. *See infra* 19. As *Egbert* held, these Congressionally provided remedies caution, if not preclude, this Court from extending *Bivens* to a new context. *Egbert*, 142 S. Ct. at 1804. Given the

Congressionally created remedies available to Plaintiff, a judicially created *Bivens* remedy is not warranted or authorized.

Notably, in 50 years of precedent, the Supreme Court has only authorized the courts to allow *Bivens* claims to proceed in three distinct contexts. *Abbasi*, 137 S. Ct. at 1855 (stating that *Bivens, Davis, and Carlson* "represent the *only* instances in which the Court has approved of an implied damages remedy under the Constitution") (emphasis added); *see also Carlson v. Green,* 466 U.S. 14 (1980)*; Davis v. Passman,* 442 U.S. 228 (1979); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971). In *Bivens*, the plaintiff actually *was* faced with a *Bivens* or nothing scenario. Prior to a 1974 amendment, the FTCA did not authorize claims for intentional torts committed by law enforcement officers. *See* Reorganization Plan No. 2 of 1973, PL 93–253, 88 Stat 50 (*hereinafter* "Reorganization Plan of 1973"). Decided in 1971, the plaintiff in *Bivens* was truly left without an alternative remedy. Similarly, the plaintiffs in *Carlson* and *Davis* had no relief other than *Bivens*. *Davis*, 442 U.S. at 242 (when a litigant has "no effective means other than the judiciary to enforce" constitutional rights violations, he "must be able to invoke the existing jurisdiction of the courts); *Carlson*, 445 U.S. at 23, (allowing a *Bivens* claim to proceed because "only a uniform federal rule of survivorship will suffice to redress the constitutional deprivation here alleged"). The FTCA now states that "with regard to acts or omissions of investigative or law enforcement officers of the United States Government, this title shall apply to any claim arising, on or after the date of the enactment of this provision, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h). Plaintiff in Claims I, II and III avails himself to this remedy. The decision to permit additional damages on top of the FTCA and the other available remedial structures in place,

*see infra* 18-22, "is a legislative determination that must be left to Congress, not the federal courts." *Egbert*, 142 S. Ct. at 1807.

Plaintiff asks this Court to improperly make this "legislative determination" by creating a *Bivens* remedy. His grievance that his entitlement to monetary damages is *Bivens* "or nothing," lies with Congress, not this Court. If he is dissatisfied with the Congressionally-provided remedies available to him, he must lobby Congress for change, not the courts. Because Plaintiff's claim presents a new context and because special factors, including an array of alternative remedial structures, counsel hesitation, this Court must not "arrogate legislative power" by allowing Plaintiff's claim to proceed. *Egbert*, 142 S. Ct. at 1803.

## III.    Plaintiff's claim against Defendant Doe 1 is meaningfully different from *Bivens*

Claim IV presents a new *Bivens* context because it is meaningfully different from the circumstances in *Bivens. See* ECF No. 51 at 13-16. Plaintiff minimizes the many meaningful differences between his case and *Bivens*. To support his flawed contention, Plaintiff relies on outdated cases from the "ancien regime" issued before *Abbasi* and *Egbert* ended such judicial activism*. See* ECF No. 57 at 15-16.

Plaintiff relies primarily on "*Groh*, *Leasing*, and *Layne*" to allege similar context with *Bivens. See* ECF No. 57 at 19. These three cases all pre-date the new *Bivens* standard set out in *Abbasi* and *Egbert. See Groh v. Ramirez*, 540 U.S. 551 (2004); *Wilson v. Layne*, 526 U.S. 603 (1999); *G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977). The Supreme Court in *Abbasi* changed the required analysis and narrowed the scope of *Bivens* to just three cases approved by the Supreme Court, holding that *Bivens, Davis, and Carlson* "represent the *only* instances in which the Court has approved of an implied damages remedy under the Constitution," *Abbasi*, 137 S. Ct. at 1855 (emphasis added), and if a case differs in any "meaningful way from previous *Bivens* cases

decided by the Supreme Court, then the context is new." *Id.* at 1859.[2] The pertinent comparison, then, is not between Plaintiff's case and pre-*Abbasi* case law. Instead, the pertinent comparison is between Plaintiff's case and *Bivens* itself. Such comparison reveals several meaningful differences.

The Supreme Court in *Egbert* made clear that any "conventional" Fourth Amendment excessive force claim does not necessarily warrant the furtherance of a *Bivens* claim. *Egbert*, 142 S. Ct. at 1805. "[S]uperficial similarities" such as "similar allegations of excessive force…almost parallel circumstances or a similar mechanism of injury" still "are not enough to support the judicial creation of a cause of action." *Id.* (citations omitted). Plaintiff ignores *Egbert*'s holding, downplays the meaningful differences between his claim and *Bivens*, and relies on "superficial similarities" to contend that his claim is "a conventional *Bivens* claim." Contrary to Plaintiff's arguments, and in accordance with *Egbert*, the meaningful differences between Plaintiff's claim and *Bivens* make clear that Count IV presents a new *Bivens* context and that this Court is "not undoubtedly better positioned than Congress to create a damages action." *Id.* at 1804.

First, the "traditional law enforcement activities," *see* ECF No. 57 at 15, at issue here are meaningfully different than the activity in *Bivens*. Defendant Doe 1, a Deputy U.S. Marshall, was ordered by the President and authorized by Congress to protect the courthouse during civil unrest. *See* Executive Order No. 13,933, 85 FR 40081 (*hereinafter* "Exec. Order No. 13,933"); 28 U.S.C. § 566. Defendant Doe 1 acted within that authority on July 11, 2020. *See* FAC ¶¶ 7, 10. The

---

[2] Plaintiff states that *Abbasi* determined that one claim—a Fifth Amendment violation claim against the prison warden—was not dismissed but determined to be a new context and remanded for a special factors analysis. *See* ECF No. 57 at 20. This claim is too cute by half. The *Abbasi* Court declined to conduct a special factors analysis due only to the "absence of a comprehensive presentation by the parties" on the issue, as well as the appellate court's failure to conduct a special factors analysis. *Abbasi*, 137 S. Ct. at 1865. On remand, the claim was dismissed in its entirety. *Turkmen v. Ashcroft*, No. 02-cv-02307, 2021 WL 4099495, at *6 (E.D.N.Y. Sept. 9, 2021).

Supreme Court has never endorsed a *Bivens* action against any Deputy U.S. Marshal, or any federal law enforcement officer protecting federal property during civil unrest. *See Cienciva v. Brozowski*, No. 3:20-CV-2045, 2022 WL 2791752 at *11 (M.D. Pa. July 15, 2022) ("The Supreme Court has never extended Bivens to claims against Marshals for use of excessive force."); *see also Abbasi*, 137 S. Ct. at 1855 (stating that *Bivens, Davis, and Carlson* "represent the *only* instances in which the Court has approved of an implied damages remedy under the Constitution).

Defendant Doe 1 has statutory authority to protect courthouses and federal property. *See* 28 U.S.C. § 566. Section 556 states, "The United States Marshals Service retains final authority regarding security requirements for the judicial branch of the Federal Government." 28 U.S.C. § 566(i). This statutory authority was not at issue in *Bivens*. Plaintiff argues that such a difference in legal authority is immaterial, asserting that differences in legal authority only matter in the "border-security context." *See* ECF No. 57 at 17. The Ninth Circuit has already recognized, though, that officers operating under a different legal mandate than that at play in *Bivens* constitutes a new context. *See Bruneohler v. Tarwater*, 743 F. App'x 740, 742 (9th Cir. 2018) (concluding that the application of the Wiretap Act constituted a meaningful difference from *Bivens* because it was "another legal mandate under which" the agents operated) (citations omitted).

Plaintiff also tries to equate, albeit unsuccessfully, Defendant Doe 1's court-protection duties with the search execution duties at issue in *Bivens*. The search of a private residence in *Bivens* constituted a law enforcement activity initiated by the government in which the subject has very little control, and an offensive action in which the public should expect law enforcement officers to plan and prepare for properly. "The mere invocation of federal power by a federal law enforcement official will normally render futile any attempt to resist an unlawful entry or arrest by resort to the local police; and a claim of authority to enter is likely to unlock the door as well."

*Bivens*, 403 U.S. at 394-95. "In such cases there is no safety for the citizen, except in the protection of the judicial tribunals, for rights wich [sic] have been invaded by the officers of the government, professing to act in its name." *Id.* at 395. In contrast, courthouse protection during violent protests is a defensive law enforcement action in which law enforcement must respond immediately in real time to the unpredictable actions of protestors and rioters. *Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[O]fficers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

The difference between public and private spaces is also meaningfully different for the *Bivens* new context analysis. The Fourth Amendment violation in *Bivens* rested on the well-worn requirement that the government obtain a search warrant before entering and searching a private space, such a private home, automobile or office. *Bivens*, 403 U.S. at 389; *see also Minnesota v. Carter*, 525 U.S. 83, 94 (1998) (the proposition that "A man's home is *his* castle" that may not be unreasonably entered by the government dates back to the 1600s) (emphasis in original). Plaintiff was not in his home, automobile, or office. Plaintiff at all times during the events at issue on July 11, 2020, was in the public square engaging in a mass demonstration near federal property, where he possessed no privacy interest. *See* FAC at ¶ 10, 11. Plaintiff minimizes this meaningful difference as a simple matter of an indoor setting versus an outdoor setting. *See* ECF No. 57 at 18. Plaintiff's argument relies on four cases that precede *Egbert*.[3] *See id*. Three of the four are from

---

[3] Plaintiff also cites one post-*Egbert* case, *Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555 (7th Cir. 2022), to assert that *Bivens* excessive force claims survived *Egbert*. *See* ECF No. 57 at 16-17, 20. This case is inapposite, and does not stand for the proposition proffered by Plaintiff. The *Bivens* analysis of the defendants' use of a fabricated search warrant—*not* excessive force—in *Greenpoint* was dicta, as the *Bivens* claims were dismissed due to the defendants' immunity to the claims. *Greenpoint*, 38 F.4th at 558 ("Even assuming *Bivens* can reach the Fourth

other circuits. The lone case from this circuit, *Pettibone v. Biden*, is pending dismissal in light of *Egbert* in accordance with the Magistrate Judge's recommendation. *See* Report and Recommendation, *Pettibone v. Biden*, No. 3:20-cv-01464 (D. Or. Sept. 22, 2022), ECF No. 205

Plaintiff also ignores the material difference between public and private spaces in the Fourth Amendment context. *See, e.g.*, *Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."). The Ninth Circuit recognizes that individuals gathered in a public space, without ownership in that space, have *no grounds* for reasonable expectations of privacy. *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1187-1188 (9th Cir. 2015). And Plaintiff does not allege in the FAC any privacy interest. The Ninth Circuit also recognizes that, when dealing with a group gathered in the same public space, officers are "not required to have individualized suspicion with respect to each plaintiff in order to have reasonable suspicion to…detain them." *Id.* at 1194. Thus, the salient distinction between Plaintiff's Claim IV against Defendant Doe 1 and *Bivens* is not simply indoors versus outdoors conduct; rather it is the meaningful difference between the Fourth Amendment protections afforded to citizens in their homes (or other private space) versus the rights of individuals engaged in an ongoing, mass demonstration on public property.

Because of these meaningful differences, Plaintiff's claim against Defendant Doe 1 presents a new *Bivens* context and must be dismissed.

---

Amendment violations here, Defendant Halverson is entitled to absolute prosecutorial immunity on these claims, and Agent Pettigrew is entitled to qualified immunity on them.").

## IV.    Special factors counsel hesitation.

For of all the reasons that Plaintiff's claim against Defendant Doe 1 presents a new *Bivens* context, the Court should defer to Congress and not extend *Bivens* to this claim. *See Egbert*, 142 S. Ct. at 1803 (new contexts, such as "a new category of defendants…represent situations in which a court is not undoubtedly better positioned than Congress to create a damages action"). Several special factors counsel against adopting this new *Bivens* context. *See* ECF No. 51 at 16-21.

The Supreme Court has not approved *Bivens* actions against Deputy U.S. Marshals for presidentially-ordered and statutorily-authorized protection of federal property during destructive civil unrest. *See Cienciva*, No. 3:20-CV-2045 at *11. Most recently, a Magistrate Judge in this District recommended dismissal of *Bivens* claims against Deputy U.S. Marshals for similar alleged conduct during the same civil unrest in July 2020. Report and Recommendation, *Pettibone*, No. 3:20-cv-01464. This Court should heed that recommendation.

Before extending *Bivens* to a new context against a new class of defendants, the Court must ask whether "court is competent to authorize a damages action not just against [Defendant Doe 1] but against [U.S. Marshals] generally." *Egbert*, 142 S. Ct. at 1806. The answer is no. Extending *Bivens* to encompass claims against Deputy U.S. Marshals performing defensive law enforcement activities to protect a courthouse during civil unrest would expand *Bivens*, impact law enforcement personnel across the Executive Branch, and potentially impede the Executive's ability, or willingness, to engage in those activities—all reasons counseling hesitation. *Id.* at 1807. ("Federal employees faced with the added risk of personal liability for decisions that they believe to be a correct response to improper activity would be deterred from carrying out their duties.") (citations omitted). These types of potential "systemwide consequences of recognizing a cause of action

under *Bivens*" that "a court cannot likely predict" are exactly the separation-of-powers concerns that caution hesitation. *Id.* at 1803. "That uncertainty alone is a special factor that forecloses relief." *Id.* at 1804. And because of such uncertainty, Plaintiff's claim is hardly "a conventional claim against a rank-and-file officer for an isolated" incident, as he contends. *See* ECF No. 57 at 26.

Another special factor, the alternative remedial structure authorizing investigation and supervision of U.S. Marshals, forecloses relief. An alternative remedy, in the *Bivens* context, refers to a congressionally created structure "concerned solely with deterring the unconstitutional acts of individual officers—i.e., the focus is whether the Government has put in place safeguards to preven[t] constitutional violations from recurring." *Egbert*, 142 S. Ct. at 1806 (internal quotations and citations omitted) "Importantly, the relevant question is not whether a *Bivens* action would disrupt a remedial scheme, or whether the court should provide for a wrong that would otherwise go unredressed. Nor does it matter that existing remedies do not provide complete relief." *Id.* at 1804. Thus, Plaintiff's protestation that for him it is *Bivens* or nothing, is immaterial. *See* ECF No. 57 at 14, 29. Indeed, *Egbert* already rejected Plaintiff's argument that there is "no deterrence without a damages remedy." *See id.* at 28. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807.

Rather than grapple with the clear holding of *Egbert*, Plaintiff cites case law that is inapposite, that predates *Egbert*, and that applied the outdated pre-*Abbasi* special factors analysis. *See* ECF No. 57 at 26. He also misstates *Egbert*'s requirement for sufficiently "remedial" employment consequences. *See id.* at 20. Plaintiff inaccurately represents that *Egbert* requires some "grievance procedure" that he can engage with. *See id.* at 15. A plain reading of *Egbert* shows otherwise: "we have never held that a *Bivens* alternative must afford rights to participation

or appeal." *Egbert*, 142 S. Ct. at 1806. *Egbert*, as well as *Hernandez*, require only that federal agencies supervise and investigate alleged employee misconduct. *See id.* at 1807. ("Thus here, as in *Hernández*, we have no warrant to doubt that the consideration of Boule's grievance against Agent Egbert secured adequate deterrence and afforded Boule an alternative remedy.") Such remedies exist here.

Both the U.S. Marshal Service and U.S. Department of Justice, Office of Inspector General invite the public to present allegations of misconduct against a Deputy U.S. Marshal. *See Complaint Form Regarding United States Marshals Service Personnel or Programs*, U.S. Marshals Service, https://www.usmarshals.gov/resources/forms/complaint-form-regarding-united-states-marshals-service-personnel-or-programs; *Office of Professional Responsibility*, U.S. Marshal, https://www.usmarshals.gov/who-we-are/office-of-professional-responsibility; *Submitting a Complaint*, U.S. Department of Justice Office of the Inspector General, https://oig.justice.gov/hotline/submit_complaint. The only practical difference between the grievance process in *Egbert* and remedies available to the Plaintiff is that Plaintiff apparently has not seized the opportunity to report. *See Egbert*, 142 S. Ct. at 1807. Notwithstanding, the U.S. Marshals Service is carrying out its duty to supervise and deter by investigating Defendant Doe 1's actions. *See* ECF No. 51 at Exhibit 1 (Washington Post). *Egbert* is clear that the deterrent effect of potential investigation and employment consequences is sufficiently 'remedial' to counsel the courts against extending *Bivens* to a new context.

The FTCA[4] and CSRA are additional special factors applicable to Defendant Doe 1 that counsel hesitation. As aforementioned, in 1971, when *Bivens* was decided, the FTCA did not cover

---

[4] Applying *Egbert*, several courts have held that the FTCA precludes a *Bivens* remedy. *See* ECF No. 51 at 19. (citing *Adams v. Martinez*, No. 15-cv-02629, 2022 WL 3645976 (D. Colo. Aug. 24, 2022); *Johnson v. Santiago*, No. 20-CV-6345, 2022 WL 3643591 (E.D.N.Y. Aug. 24, 2022); *K.O.*

claims regarding intentional torts committed by law enforcement officers. When Congress amended the FTCA in 1974, it expressly covered law enforcement intentional torts such as "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h); *see also* Reorganization Plan of 1973. Therefore, Plaintiff's argument that Defendant Doe 1's motion "identifies no concern not present in—and held insufficient by—*Bivens* itself" is incorrect. *See* ECF No. 57 at 20. Rather than reject the FTCA as a special factor, the *Bivens* court simply did not consider something that did not yet exist.

Plaintiff also points to *Carlson* as support for his argument that this Court should reject the FTCA as a special factor. *See* ECF No. 57 at 21-22. Defendant Doe 1 recognizes that 42 years ago, the Supreme Court held that the availability of an FTCA claim did not preclude a *Bivens* claim. *Carlson*, 446 U.S. at 19-20. This determination was based on a different analysis than what is now required by *Abbasi* and *Egbert*. *Id.* In *Carlson*, the Supreme Court explained the "two situations" that would defeat a *Bivens* complaint under applicable precedent at that time. *Carlson*, 446 U.S. at 18-19. "The first is when defendants demonstrate 'special factors' counseling hesitation in the absence of affirmative action by Congress. The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovering directly under the Constitution and viewed as equally effective." *Id.* (citations omitted) (emphasis in original). Applying the second prong of this outdated test, *Carlson* found that Congress did not "explicitly declare" the FTCA to be a "substitute" for *Bivens* and that the FTCA was not "equally effective" as the plaintiff's *Bivens* claims. *Id.* at 19-25. This dicta in *Carlson*, however, is no longer good law.

---

*v. Sessions*, 41 F.4th 664, 665 (D.C. Cir. 2022) (Silberman, J., concurring); *Davis v. Greer*, No. 21-C-0995, 2022 WL 2460782 (N.D. Ill. July 6, 2022); *Dotson v. Fed. Bureau of Prisons*, No. 2:21CV00147, 2022 WL 3138706 (E.D. Ark. June 21, 2022)).

The Supreme Court in *Abbasi* rejected the "two scenarios" analysis used in *Carlson*, and replaced it with the now-required "special factor" analysis. Applying *Abbasi*, it is immaterial whether an alternative remedy is a perfect "substitute" for or "equally effective" as *Bivens*. Likewise, *Turkmen*, a sibling case to *Abbasi*, crystalized this point. U.S. Magistrate Judge Gold's Report and Recommendation, ultimately adopted by the *Turkmen* court, explained that *Abbasi* "rejected the notion that, by passing the Westfall Act, Congress suggested its support for *Bivens* actions." *Turkmen v. Ashcroft*, No. 02-cv-2307, 2018 WL 4026734 at *7 (E.D.N.Y. Aug. 13, 2018). On that basis, the court in *Turkmen* specifically held "the FTCA analysis in *Carlson* cannot survive [*Abbasi*]." *Turkmen*, 2021 WL 4099495, at *6 (internal punctuation omitted). *Egbert* confirmed this proposition, holding: "the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts. So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807.

Finally, the post-*Bivens* enactment of the CSRA is an additional Congressional action that should deter the kind of misconduct alleged here. The CSRA was enacted in 1978, eight years after *Bivens* was decided. Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111. The *Bivens* court therefore could not have considered the CSRA as a "special factor." Plaintiff's argument that, because CSRA employment consequences do not provide a grievance procedure for plaintiffs to participate in, there should be no preclusion here, *see* ECF No. 57 at 25, was already rejected by the Supreme Court. *Egbert* plainly states that participation is not a required for an alternative remedy. *Egbert*, 142 S. Ct. at 1806. ("[W]e have never held that a *Bivens* alternative

must afford rights to participation or appeal."). Accordingly, the CSRA fits squarely within *Egbert*'s standard for alternative remedial structures.

For these reasons, multiple special factors counsel hesitation against allowing Count IV to proceed against John Doe 1. Accordingly, Count IV must be dismissed.

## V.    Defendant Doe 1 is entitled to qualified immunity

Defendant Doe 1 allegedly used non-lethal force in defense of federal property, as directed by the President via an Executive Order, during civil unrest. This behavior, as alleged in the FAC and the incorporated Washington Post article, is not clearly unlawful, nor would a reasonable officer have known it was unlawful at the time this event took place.

The Executive Order directing Defendant Doe 1 to the Mark O. Hatfield Courthouse was enacted on June 26, 2020, a mere fifteen days before the alleged events in the FAC. Exec. Order No. 13,933; *see* FAC at ¶ 10. There was no clearly established law at this time explaining the Executive Order's relation to the Fourth Amendment for officers, such a Defendant Doe 1, to rely on. As another court in this District held in regards to the summer 2020 unrest: "the Court recognizes the difficulty in drawing an enforceable line that permits police officers to use appropriate means to respond to violence and destruction of property without crossing the line." *Don't Shoot Portland v. City of Portland*, 465 F. Supp. 1150, 1154 (D. Or. 2020). The absence of any case law regarding the Executive Order shows that the law at the time of the challenged event was "not clearly established that the conduct was unlawful." *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018).

The right at issue must be defined "in a concrete, particularized manner." *Id.* at 822. Plaintiff cites no cases clearly establishing that it is unlawful for a U.S. Marshal to use non-lethal force in defending federal property during violent, destructive protests or riots. *See* ECF No. 57 at

30-39.[5] Plaintiff also does not identify any case law clearly establishing that he was free to partake in a violent and destructive protest, *see* ECF No. 51 at Exhibit 1 (Washington Post), throw tear gas cannisters towards officers, *see* FAC at ¶ 11, and ignore officers' warnings without being detained or deterred in any way. *See* ECF No. 51 at 22-23. Absent any evidence that the law was clearly established at the time, Plaintiff points to *Nelson v. City of Davis*, 685 F.3d 867 (2012) as the standard for lawful officer behavior in "protest conditions." *See* ECF No. 57 at 38. However, the "protest conditions" are distinguishable from, and not instructive to, the facts here.

In *Nelson*, the officers arrived to a party at the appellant's apartment, and then trapped the appellant and 15-20 party attendees within the apartment. *Nelson*, 685 F.3d at 874. The attendees raised their hands to demonstrate compliance, but the officers shot pepperballs into the crowd. *Id.* The officers admitted that no one from the group threw anything at them, and appellant and the attendees stated they did not hear any commands to disperse before the "shots had already been fired." *Id.* Unlike *Nelson*, Plaintiff had ample opportunity to leave the demonstration site. *See* FAC at ¶ 11. He received an order to disperse via tear gas grenade, failed to comply with that order, and tossed the grenade back at officers. *Id.*

Mostly importantly, though, the policing conduct in *Nelson* is materially different from the facts alleged in the FAC. The officers in *Nelson* arrived with the objective of entering a private residence and dispersing attendees from that space; Defendant Doe 1 was hailed to Portland, OR to *protect* federal property and to maintain a perimeter during destructive public protests. *See* Exec. Order No. 13,933 (The Attorney General "shall provide . . . personnel to assist with the protection of Federal monuments, memorials, statutes, or property"); *see also* ECF No. 51 at Exhibit 1

---

[5] Plaintiff relies primarily on 9th Circuit case law, but he fails to allege that Defendant Doe 1 actually resides in the 9th Circuit or that a reasonable officer in Defendant Doe 1's position would have any reason to have knowledge of 9th Circuit case law.

(Washington Post). Plaintiffs fail to cite any clearly established law regarding how officers must act, and how much force they may use, when they are tasked with protecting property during destructive civil unrest while protesters refuse to follow lawful orders to disperse. Rather than the offensive, police-initiated contact at issue in *Nelson*, as well as other the cases cited in Plaintiff's opposition, Defendant Doe 1 was engaged in protecting federal property while "confronted with a mob." *Washington Mobilization Comm. v. Cullinane*, 566 F.2d 107, 120 (D.C. Cir. 1977) ("Confronted with a mob the police cannot be expected to single out individuals; they may deal with the crowd as a unit.") Defendant Doe 1 did not go to the mob, it came to him as he attempted to execute his presidentially-authorized duty to defend federal property. Plaintiff fails to provide case law that speaks to this important distinction, further establishing that the law was *not* clearly established at the time of the challenged conduct. *Felarca*, 891 F.3d at 815. As a result, this Court should find that Defendant Doe 1 is entitled to qualified immunity.

## **CONCLUSION**

For all these reasons, the Court should grant this motion and dismiss Count IV in its entirety against Defendant Doe 1 in his individual capacity with prejudice.

Respectfully submitted this 11th day of November, 2022.

s/ Andrew D. Campbell
Andrew D. Campbell, OSB No. 022647
Email: andrew@heltzel.com
Heltzel Williams PC
PO Box 1048
Salem, OR 97308
Phone: (503) 585-4422
Fax: (503) 370-4302


/s/ Christopher J. Keeven
Christopher J. Keeven, *pro hac vice*
ckeeven@shawbransford.com
Victoria E. Grieshammer, *pro hac vice*
vgrieshammer@shawbransford.com
Shaw Bransford and Roth PC
1100 Connecticut Ave NW, Suite 900
Washington, D.C. 20036
Telephone: (202) 463-8400

*Attorneys for Defendant John Doe 1*

20

## CERTIFICATE OF SERVICE

I hereby certify that I served the attached **DEFENDANT JOHN DOE 1'S REPLY IN SUPPORT OF HIS MOTION TO DISMISSE** on:

Christopher R. Best                       Ashley Rebecca Garman
James M. Healy                           US Dept of Justice, Civil Division
The Gatti Law Firm                       PO Box 888
235 Front St SE Ste 200                  Washington, DC 20044
Salem OR  97302                          Email: Ashley.r.garman@usdoj.gov
Email: cbest@gattilaw.com
Email: jhealy@gattilaw.com               Stephen Terrell
    Attorneys for Plaintiff            Civil Division/T-FTCA Name
                                      PO Box 888
                                      Washington, DC 20044
                                      Email: Stephen.terrell2@usdoj.gov
                                      Attorneys for Defendant USA

☐ By mailing to said attorney(s) a full and correct copy therefor, contained in a sealed envelope, with postage paid, addressed to said attorney(s) as stated above and deposited in the United States Post Office at Salem, Oregon.

☐ By hand delivering to said attorney(s) a true copy thereof.

☑ By emailing to said attorney(s) at their above listed email address(es) a true copy thereof.

☑ By electronic filing with the District Court's CM/ECF system.  The CM/ECF system generated Notice of Electronic Filing constitutes proof of service upon a Filing User in accordance with Fed. R. Civ. P. 5(d).

Dated this 11th day of November, 2022.

HELTZEL WILLIAMS PC

s/ Andrew D. Campbell
Andrew D. Campbell, OSB #022647
Attorney for Defendant John Doe 1
PO Box 1048
Salem, OR 97308
Phone: (503) 585-4422
Fax: (503) 370-4302
Email: Andrew@heltzel.com